**Opinion filed October 23, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00113-CV

_____

## IN THE INTEREST OF C.L.S., C.L.S., J.T.S., AND C.S., CHILDREN

**On Appeal from the 318th District Court**
**Midland County, Texas**
**Trial Court Cause No. FM-55,053**

### M E M O R A N D U M   O P I N I O N

The trial court entered an order in which it terminated the parental rights of the biological parents of C.L.S., C.L.S., J.T.S., and C.S. The mother appeals. We affirm.

### I. *Issues*

In her brief, the mother sets out five issues related to the legal and factual sufficiency of the evidence to support termination. However, we need not address the mother's first, second, third, and fourth issues because she concedes that they

are not dispositive of this appeal. *See* TEX. R. APP. P. 47.1. The mother presents argument only on the fifth issue. In that issue, she contends that the evidence is legally and factually insufficient to support the finding that termination of her parental rights is in the best interest of the children.

## II. *Termination*

Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001. In this case, the trial court found that the mother committed four of the acts listed in Section 161.001(1). The trial court found that the mother had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being, that the mother had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being, that the mother had failed to comply with the provisions of a court order stating the actions necessary for her to obtain the return of the children, and that the mother had knowingly engaged in criminal conduct that resulted in conviction

and confinement and an inability to care for the children for not less than two years. *See id.* § 161.001(1)(D), (E), (O), (Q).

The mother concedes that the evidence was both legally and factually sufficient to support the trial court's finding under Section 161.001(1)(Q): that the mother knowingly engaged in criminal conduct that resulted in her conviction and confinement and her inability to care for her children for not less than two years. As the mother recognizes, a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute. Therefore, the unchallenged finding under subsection (Q) is sufficient to support termination of the mother's parental rights as long as termination was shown to be in the children's best interest. *See id.* § 161.001. The trial court found that termination was in the children's best interest. *See id.* § 161.001(2).

### III. *Analysis: Best Interest*

The question before us is whether the best interest finding is supported by legally and factually sufficient evidence. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one

or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The record shows the Department of Family and Protective Services received information that both parents were abusing drugs, and the Department found "reason to believe" during a June 2012 investigation. A few months later, in October 2012, J.T.S. was in a vehicle with his father when the father was stopped for a traffic offense. The police officer arrested the father during the traffic stop because the father was in possession of a controlled substance and drug paraphernalia. The father also appeared to be under the influence of "some type of substance." J.T.S. was taken to the police station and was ultimately taken into emergency custody by the Department after the Department's investigator was unable to locate the mother.

Daisy Campos, a caseworker for the Department, testified that the other three children were subsequently removed from their parents' care due to the mother's noncompliance. The mother would not permit the Department to see the children or the home in which they lived. The mother tested positive for amphetamine and methamphetamine, and she acknowledged using Xanax and marihuana. She also acknowledged using drugs while the children were in her care. After removal, the trial court ordered the parents to participate in various services. The father made no attempt to complete services or to be a part of the children's lives. The mother participated in some of those services, but she did not complete them.

While this case was pending, the mother was arrested on drug-related charges, and at the time of the final hearing on termination, she was in a federal prison in another state. Her projected release date is April 17, 2018. The mother maintained contact with the children through phone calls and letters. However, the mother was not able to provide for the children and had not provided for any

4

alternative placement with another relative. Likewise, the father was not able to provide for the children.

The children, who were ages seven years, four years, two years, and three months at the time of the removal, were placed with a maternal relative. At the time of the final hearing, the children had lived with the maternal relative and her husband for approximately one year. Both are committed to the children and are willing to adopt the children if the children become available for adoption. The Department's plan for the children was termination of the parents' rights and adoption by the maternal relative and her husband. Campos believed that termination of the parents' rights would be in the best interest of the children. She stated that, even though the children may have expressed a desire to return to their mother, termination of the mother's rights would be in their best interest because termination and adoption would provide the stability needed by the children.

The guardian ad litem testified that parental rights should be terminated in this case. She did not think that the mother had ever been the primary caretaker for the children. Various people had cared for the children in the past. The mother had placed the children "in dangerous situations" with people who were not able to properly care for them. The mother's chosen caregivers included one family member who was a known drug user and a cousin who was on parole for manufacturing methamphetamine. The mother had agreed to allow that cousin to adopt C.S.

The guardian ad litem had had regular visits with the children and the relatives with whom the children were placed. The guardian ad litem testified that the placement was a "great placement" and that the children "love it there." She noted that the children want to be with their mother but that they also want to stay with their placement family and that they love the maternal relative with whom they were placed. The guardian ad litem had no concerns of the ability of the

placement couple to properly care for the children or be a long-term placement. Because of the permanency of adoption and the need for stability, the guardian ad litem believed that the placement couple should be allowed to adopt the children but that it was important for the children to remain in contact with the mother.

The maternal relative with whom the children were placed encouraged a continued relationship between the mother and the children. She said that the mother called the children from prison once or twice a week and that the children were always excited to talk to the mother. The maternal relative testified that she would like to adopt the children but that she will maintain contact with the mother and, if appropriate, will permit the children to see the mother after she is released from prison.

Based upon the evidence in the record and the *Holley* factors, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence; the trial court could reasonably have formed a firm belief or conviction that it would be in the best interest of all four children for the mother's parental rights to be terminated. The evidence is both legally and factually sufficient to support the best interest finding. We overrule the mother's fifth issue.

IV. *This Court's Ruling*

We affirm the trial court's order of termination.


MIKE WILLSON

JUSTICE


October 23, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.